# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEVE L. WRIGHT, JR., | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 09-0585-CV-W-FJG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

Before the Court is movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. No. 1). The Court finds that it has jurisdiction over this matter.

By a seventeen-count indictment filed on July 2, 2004, Wright was charged with conspiracy to distribute more than 50 grams of cocaine base, and other controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 21 U.S.C. § 846 (Count One); possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2 (Count Two); attempted possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Three); use of a firearm (causing the death of Hector Santos) during and in relation to the crime charged in Count Three, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and § 924(i)(1) (codified at the time of the offense as § 924(j)(1)) (Count Four); attempted possession with intent to distribute more than 100 grams of phencyclidine (PCP), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2 (Count Five); use and discharge of firearms (wounding Anthony Conaway and Justin Hill) during and in relation

to the crime charged in Count Five, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), and 18 U.S.C. § 2 (Count Six); the murder of Michael Birks, a potential federal witness to the crimes charged in Counts Five and Six, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 18 U.S.C. § 2 (Count Seven); possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Eight); use of a firearm (wounding Reymundo Gonzalez) during and in relation to the crime charged in Count Eight, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Nine); possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2 (Count Ten); use of a firearm (causing the death of Alex Clark) during and in relation to the crime charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(i)(1) (codified at the time of the offense as § 924(j)(1) (Count Eleven); possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2 (Count Twelve); possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2 (Count Thirteen); possession of MDMA ("ecstacy") with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2 (Count Fourteen); possession of firearms in furtherance of the crimes charged in Counts Twelve, Thirteen, and Fourteen, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and 18 U.S.C. § 2 (Count Fifteen); and distribution of more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (B)(1)(A)(iii) (Count Sixteen). Count Seventeen alleged that more than $33,000 in seized United States currency was subject to forfeiture as the proceeds of drug-trafficking offenses, according to 21 U.S.C. § 853.

A jury trial began on August 1, 2006, before this Court. On September 7, 2006, the jury returned guilty verdicts against Wright on Counts One through Nine and Eleven through Fifteen, acquitting Wright on Counts Ten and Sixteen. Wright did not contest the forfeiture allegations set forth in Count Seventeen. On February 9, 2007, Wright was sentenced to serve two concurrent terms of life imprisonment, to be followed by consecutive terms of 110 years. Judgment was entered by this Court on February 15, 2007, and Wright filed a timely notice of appeal on February 22, 2007.

In his direct appeal, Wright asserted: (1) that this Court had improperly restricted his *voir dire*, in that the Court refused to allow individual questioning as to their beliefs on the propensity for violence among members of street gangs; (2) that the evidence was insufficient to sustain the conviction of Wright for the murder of Michael Birks under 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2 (Count Six); and (3) that this Court improperly permitted Anthony Conaway to testify about statements made to him by Michael Birks. Each of these claims was rejected by the Eighth Circuit Court of Appeals, which affirmed Wright's convictions and the judgment of this Court. United States v. Wright, 536 F.3d 819 (8th Cir. 2008).

Movant sets forth only one ground for relief in the pending motion: that trial counsel was ineffective for failing to pursue interim payments and adequately investigate available witnesses to testify on Wright's behalf, which prevented his adequate representation of Mr. Wright due to his dire financial situation. See Doc. No. 1, p. 6.

To establish a claim for relief based upon ineffective assistance of counsel, petitioner must show that counsel failed to exercise the skill and diligence that a reasonably

3

competent attorney would have exercised under similar circumstances. Thomas v. Lockhart, 738 F.2d 304, 307 (8th Cir. 1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). Petitioner must also demonstrate that he was prejudiced by the alleged incompetence of counsel by showing the existence of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

As noted by the government in their response, there is no merit to Mr. Wright's claim that his counsel was ineffective for failing to pursue interim payments. As the record in this matter demonstrates, counsel made numerous efforts to obtain interim payments and additional funding from the CJA system prior to and through trial. See Doc. Nos. 314, 328, 338, 350, 352, 363, 368, 369, and 559. See also affidavit of William Shull, Doc. No. 21. Certainly petitioner has not shown that Mr. Shull, in seeking interim payments, failed to exercise the skill and diligence that a reasonably competent attorney would have exercised under similar circumstances. Wright has not demonstrated counsel was ineffective in this regard.

Additionally, Wright complains that Mr. Shull only called two witnesses in his defense. As noted by the government and by Mr. Shull, however, counsel's trial strategy was to make the defense case through cross-examination of the informants and cooperating defendants who testified against Wright. This tactical decision falls within the wide range of reasonable professional assistance.

Finally, Wright complains that Mr. Shull did not call several other witnesses, including Bertha Harrell, Kameron Moore, Sirron Rand, Brandon Winston, Oscar Luna, Charvez Williams, Deon Spriggs, Rashawn Long, and William Williams. Wright indicates that use of these witnesses at trial would have changed the outcome of his case.

For four of the nine witnesses, Wright has not provided those witnesses' affidavits or any other evidence that would support his claims as to what their testimony would be; instead, all he provides are his own allegations as to what those witnesses would have said. Wright's counsel states that "if the Court orders an evidentiary hearing, counsel will use discovery to locate Ms. Harrell, Mr. Walton, and Mr. Luna, and will compel Mr. Spriggs to testify." However, as noted by the government, failure to provide specific information as to the content of a proposed witnesses' testimony is fatal to petitioner's claim. See Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989)(finding that appellant who filed a § 2255 motion but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness, which was not enough to undermine confidence in the outcome of the trial, as required by Strickland).

With respect to the remaining five witnesses, three of the five (Rashawn Long, William Williams, and Charvez Williams) are members of the same gang as Wright, and have significant criminal histories. The government and Mr. Shull indicate that there were tactical reasons for not calling these witnesses due to their criminal records (and, with respect to Rashawn Long and William Williams, their participation in the murder of Michael

5

Birks, Count VII of the indictment). The Government states that calling any of Wright's gang associates "would have [allowed] the government to explore, before the jury, even more of this violent gang's criminal history through cross examination of prior convictions and incidents in which these 'witnesses' themselves had significant criminal exposure, raising immunity issues and hurdles which could probably have not been cleared. For an experienced defense counsel to wish to separate his client from such witnesses, rather than to draw attention to their close associations and criminal pasts, can hardly be second guessed as an inappropriate trial strategy." Doc. No. 11, p. 48. This Court agrees that this is sound trial strategy, and certainly is a tactical decision which falls within the wide range of reasonable professional assistance.

With respect to Wright's last two purported witnesses, the government argues that Wright has not demonstrated that he was prejudiced by their absence at trial. Wright states that unused witness Sirron Rand would have testified that he did not introduce Ramon Strickland to Steve Wright (at trial, Mr. Strickland testified that Rand introduced him to Wright). The government asserts that this point is so trivial that it never even approaches materiality, much less prejudice. Doc. No. 11, p. 45. This Court agrees.

Wright also asserts that unused witness Kameron Moore "was at his sister's house with Mr. Wright and a few friends on the night of Alex Clark's murder . . . [and that] Mr. Moore would have testified as an alibi witness that Mr. Wright was not at the scene of the crime when Alex Clark was murdered." See Doc. No. 1, p. 9. The government notes that in Wright's 2255 motion, no specifics as to the time of this purported alibi were provided by Wright, and that Wright could easily have been at another location other than the scene of

the Clark murder earlier or later in the evening.  See Doc. No. 11, p. 45.  In Wright's traverse, Wright argues that there was no evidence at trial from either the government or the defense of Mr. Wright's whereabouts at the time of Clark's murder, or of the exact time of Clark's murder.  Wright provides an affidavit from Moore indicating that Shull had contacted Moore and, later, Moore met with Shull in his office.  Moore explained to Shull that Wright had been with him and about 6 other people throughout the evening of June 29, 2001 through the morning of June 30, 2001.  Although Moore's name appears on defendant's proposed witness list, Moore asserts in his affidavit that Steve Wright called him and told him that Mr. Shull did not want him to testify, and that Mr. Wright did not know why but said that he trusted his attorney (see Moore affidavit, Doc. No. 16, Ex. 2).  Moore indicates in his affidavit that he would have testified that Wright arrived at Moore's sister's home at approximately 9:30 p.m., and that he was with him until approximately 2:00 a.m. on June 30.

Strickland teaches that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690, 104 S.Ct. 2052.  The Eighth Circuit has consistently held that a reasoned decision not to call a witness "is a virtually unchallengeable decision of trial strategy," in part because "there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences." Rodela-Aguilar v. U.S., 596 F.3d 457, 464 (8th Cir. 2010).  In this matter, it is clear that Mr. Shull interviewed Mr. Moore prior to trial.  Mr. Shull asserts in his affidavit that the witnesses proposed by Wright "proved not to be beneficial to Mr. Wright.  Some indicated that they

7

would not or could not testify due to legal matters pending against them. At least one witness had gang tattoos or known affiliations with Mr. Wright's alleged gang which would have created major credibility issues for him. Other witnesses were determined to have significant liabilities as to prior records and convictions." Doc. No. 21, p. 2. The Court has no reason to disbelieve counsel's rationale for not calling Mr. Moore and the other proposed witnesses identified by Mr. Wright. Further, the Court finds that petitioner has not demonstrated Strickland prejudice, that is, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## JUDGMENT

For the aforesaid reasons movant's 28 U.S.C. § 2255 Motion to vacate, set aside, or correct sentence (Doc. No. 1, filed on July 31, 2009), is denied.

No evidentiary hearing will be held in this matter because the issues raised are resolvable by the record. Furthermore, movant will be denied a motion for certificate of appealability, in that the issues raised are not debatable among reasonable jurists, nor could a court resolve the issues differently.

**IT IS SO ORDERED.**

Date: 05/26/10  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
Chief United States District Judge